## Barry v. Congleton Brothers.

(Decided December 1, 1910.)

### Appeal from Fayette Circuit Court.

Affirmed on the Evidence.—Held, on the whole case that the judgment is supported by the evidence, and there being no error of law complained of, the judgment is affirmed.

W. C. G. HOBBS for appellant.

J. EMBRY ALLEN for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellees recovered of appellant in the court below judgment for an alleged balance of $73.18, due upon an account for lumber they sold and delivered him. The judgment also declared appellees entitled to a material-man's lien for the above amount upon certain real estate in the city of Lexington, upon which buildings had in part been erected with the lumber in question, and directed that so much of it be sold as would satisfy the lien debt and costs of the action. Appellant being dissatisfied with the judgment, has appealed.

It appears from the record that appellant in 1905, informed appellees of his purpose to build two dwelling houses on the Lexington real estate and inquired of them what they would charge him for the lumber necessary to their erection, at the same time furnishing them a pencil memorandum showing the quantity, quality and kind of lumber desired for the buildings. This memorandum was made by appellant's architect, Henry. After examining it appellees informed appellant that they would furnish the lumber specified therein at the price of $290 for one of the houses, or $580 for the two; appellant accepted the latter proposition and the contract was thus concluded.

It was admitted by appellant that appellees furnished him the lumber called for by the specifications contained in the memorandum referred to, and claimed by appellees that in addition thereto they sold and delivered appellant at his request and upon his promise to pay therefor, other and extra lumber for his buildings of the market value of $156.30, making their total account against him $736.30. Upon this account certain credits amounting in the aggregate to $664.12 were allowed, leaving unpaid a balance of $72.18, which together with $1 the clerk's fee for recording their lien, constituted the amount for which the judgment in appellee's behalf was rendered.

There seems to be no specific denial in any of appellant's pleadings that the extra lumber was furnished him by appellees, but it is alleged in his answer that appellees agreed to furnish all the lumber required for the construction of the two houses at the price of $580 and claimed in his deposition that such extra lumber as was furnished went into outbuildings on the premises occupied by the two houses. His architect, Henry, testified

that no extra lumber was furnished by appellees, but the delivery to appellant of the extra material by appellees was proved by Lee Congleton, the books of appellees, Mrs. Simcox, Owens builder of the two houses, and by the conduct of appellant as well; for why did the latter pay appellees as much as $664.12, if they only furnished him the $580 worth of lumber called for in the pencil memorandum, or were to receive but $580, for all the lumber they delivered him? Moreover, if, as he admits, extra lumber furnished by appellant was used in the out-buildings on the premises, that fact would as much entitle them to a judgment for its value and the enforcement of their lien, as if it had been used in the dwelling houses.

As to the agreement between the parties Lee Congleton, and James Owens, the carpenter who erected the two buildings for appellant, testified with great positiveness that appellees only agreed to furnish for the houses the material specified in the pencil writing, for $580, and that there was no agreement by appellees to furnish other material without additional cost to appellant. On the other hand appellant testified that whatever lumber was needed for the construction of the buildings appellees agreed to furnish at the price of $580, and that this sum included all lumber for which appellees were attempting to charge as extra material. This testimony was in some measure supported by that of the witness, Henry, though not with the same positiveness. Aside from the conduct of appellant in paying appellees considerably in excess of the $580 for material furnished, it may well be said that his version of the contract is a most unreasonable one; such a contract as he claims was made would have left appellees wholly in the dark as to the cost of the buildings and ignorant of what materials they would have to furnish or how much. It would also have left them unprotected against wastefulness on the part of the owner or builder of the houses and compelled them to continue the delivery of material until the owner or builder would say "hold, enough, the house is completed." It is incredible that experienced lumber and material men, such as appellees are conceded to be, would have placed themselves so completely at the mercy of appellant.

How much more in accord with reason and the customary methods of conducting such transactions would it be for the material man to require the owner or contractor to exhibit to him an itemized statement of the

quantity and quality of the material necessary for the construction of the desired building that he might intelligently make a price on the same. Appellee's evidence strongly tended to prove that this reasonable and customary course was pursued by them in contracting with appellant and that the $580 he was to pay them was the price agreed upon for only such materials for the two houses as were originally specified in the pencil memorandum; and if so, they were entitled to the extra compensation allowed them by the circuit court for the extra material they furnished appellant for his two houses.

The circuit court properly dismissed appellant's counterclaim by which a recovery for damages was sought on the ground that a part of the lumber furnished him by appellees was defective and unfit for use in his buildings. It was in substance alleged in appellees' reply that this claim asserted by appellant was urged before they sued him, and that by agreement with him the matter was arbitrated and fully settled by two persons selected by the parties, by whose award appellant was allowed damages on the ground complained of in the sum of $17, for which amount appellees gave him credit in the account sued on and the credit has, we find, been allowed by the judgment. We fail to find in appellant's pleadings or proof any denial of this arbitration; hence, further consideration of it is unnecessary.

It is claimed by appellant in his deposition and also testified by Henry that an item of 33 joists of the value of $19.65 charged on the bill of extras, which should have been furnished by appellees as a part of the items making up the bill of $580, were improperly charged to him on the account sued on, as extras. The item of the joists does appear at the bottom of the first sheet of the original pencil bill, but Lee Congleton testified that this item was not on the bill when it was shown him and his bid made on it, but was without his knowledge or consent later added to it by some one; that he correctly entered all the items of the original bill or pencil memorandum on a book of appellee's kept for that purpose immediately following the making of the contract to furnish appellant the materials therein specified at $580, and that the book of appellees does not contain the item of the joists and never did so. Owens, appellant's builder, testified that when appellees first saw the pencil memorandum it did not contain the item of the joists, nor did it do so when appellees made with appellant the contract to furnish him the materials contained therein at the price of $580.

Owens further testified that this pencil memorandum, which had been made out by Henry was left in his possession after the contract was made between appellant and appellee; that when he had completed the two houses to the point that required the placing of the joists, he discovered that they were not on the bill in question and he at once took the bill to appellant and Henry and told them they had left the joists; that they took the bill away with them and later returned and told him the joists were on it and called his attention to the item on the last line of the first page. This Owens stated was the first time he ever saw the item, though he had before giving the bill to appellant and Henry carefully looked on every page for it.

In addition to the testimony of Lee Congleton and Owens that the item of the joists was not on the bill when the contract between appellees and appellant was made, there was that of another witness which we think entitled to great weight. This witness was one Dodge, of the Lexington Lumber Company to whom appellant submitted the pencil bill before his contract with appellees was made; his purpose in submitting it to Dodge being, as he admitted, to obtain a bid from his company for furnishing the material specified in the bill. Dodge testified that the bill in question, when submitted to him, did not contain the item of the joists.

In view of the foregoing evidence we concur in the conclusion reached by the circuit court that the item of 33 joists was not on the pencil memorandum when it was submitted to appellees or when they contracted with appellant to furnish the materials therein specified for the two houses at the price of $580. Indeed, on the whole case we do not disagree with any conclusion of fact contained in the judgment appealed from. We think the judgment is supported by the weight of evidence, and there being no error of law complained of, or committed by the court below, the judgment is affirmed.